**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02812-SBP

S.E.D.,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

     This civil action is before the court pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.,* of

the Social Security Act (the "Act"), for review of the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying Plaintiff[1] S.E.D.'s application for

supplemental security income ("SSI"). After consideration of the briefs and the administrative

record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED as

follows.

## BACKGROUND

     Plaintiff seeks judicial review of the Commissioner's final decision denying her SSI

application filed on April 16, 2020, in which she claimed that she was disabled beginning on

January 1, 2012. *See* ECF No. 10 ("Opening Brief") at 2; ECF No. 8-2 at 15.[2] An Administrative

---

[1] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the
court's Case Management/Electronic Case Files ("CM/ECF") system and the page number

Law Judge ("ALJ") held an evidentiary hearing, ECF No. 8-2 at 58-91, during which Plaintiff amended her disability onset date to April 16, 2020. *Id.* at 15. The ALJ thereafter issued a ruling on March 16, 2022, denying Plaintiff's SSI application. *Id*. at 15-31. The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on September 1, 2022. *Id.* at 1. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 9, and jurisdiction is proper pursuant to 42 U.S.C. § 1383(c)(3).

## FACTUAL BACKGROUND

Plaintiff was 37 years old on her amended disability onset date and 39 years old on the date of the ALJ's decision. ECF No. 8-2 at 26; Opening Brief at 4. She completed ninth grade and obtained a GED. She worked as a certified nursing assistant and as a clerk in a cafeteria. Opening Brief at 4. However, the ALJ determined that the earnings from these jobs were not sufficient to constitute substantial gainful activity, and therefore did not qualify as past relevant work. *Id*. (citing AR 26, 279).

In her application, Plaintiff asserted that she was disabled due to fibromyalgia,[3] attention deficit hyperactivity disorder ("ADHD"), "Alers down syndrome [sic]," metabolic disease, and

___

associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

[3] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. FM is a common syndrome." Social Security Ruling 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) ("SSR 12-2p") (footnote omitted). For ease of reference, when referring to this publication, the court uses the Westlaw pagination.

Ehlers-Danlos syndrome ("EDS").[4] *Id*. at 3 (citing AR 121, 278). The claim was denied initially

on October 22, 2020, and upon reconsideration on August 9, 2021.  After a hearing held on

February 23, 2022, ALJ Bryan Henry issued an unfavorable decision dated March 16, 2022.

Opening Brief at 3-4.

## ALJ's DECISION

In the final decision, the ALJ applied the five-step sequential process for determining

whether an individual is disabled outlined in 20 C.F.R. § 416.920(a).[5] At step one, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since her amended alleged

---

[4] Plaintiff's briefs do not expressly define EDS, other than citing an opinion in the
Administrative Record that it is a "connective tissue" disease. Opening Brief at 16 (citing AR
392).

[5] "The Commissioner has established a five-step sequential evaluation process for determining
whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful
activity. A claimant who is working is not disabled regardless of the medical findings.
2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe
impairment' must significantly limit the claimant's physical or mental ability to do basic
work activities.
3. The ALJ must then determine if the impairment meets or equals in severity certain
impairments described in Appendix 1 of the regulations.
4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must
determine whether the claimant can perform his past work despite any limitations.
5. If the claimant does not have the residual functional capacity to perform her past work,
the ALJ must decide whether the claimant can perform any other gainful and substantial
work in the economy. This determination is made on the basis of the claimant's age,
education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see
also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation
process).

onset date. ECF No. 8-2 at 17. At step two, the ALJ found that Plaintiff had severe

impairments of "hypermobility [of joints] syndrome; degenerative disc disease of the cervical

spine; osteoarthritis of the bilateral knees with chondromalacia; tachycardia; depression;

anxiety; and attention deficit hyperactivity disorder (ADHD). *Id*. at 17-18. At this step, the

ALJ also concluded that Plaintiff's alleged fibromyalgia "is not medically determinable

pursuant to SSR 12-2p." *Id*. at 17. He also concluded that Plaintiff's alleged EDS was likewise

not a medically determinable impairment. *Id*. at 18. As noted, however, the ALJ did find

Plaintiff's hypermobility syndrome was a severe impairment.

At step three, the ALJ concluded that Plaintiff did not have an impairment or a

combination of impairments that met or medically equaled one of the listed impairments in the

disability regulations deemed to be so severe as to preclude substantial gainful employment at

step three. ECF No. 8-2 at 18-20.

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC")

to perform a reduced range of "light" work as defined in 20 C.F.R. § 416.967(b),[6] with the

following limitations:

> [she] can occasionally lift and carry 20 pounds, frequently 10 pounds; can sit for
> approximately six hours in an eight hour day; stand and walk for approximately
> six hours in an eight hour day; occasionally climb ramps and stairs; never climb

---

[6] The regulations define "light work" as that which "involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some pushing and pulling of arm or
leg controls. To be considered capable of performing a full or wide range of light work, you must
have the ability to do substantially all of these activities. If someone can do light work, we
determine that he or she can also do sedentary work, unless there are additional limiting factors
such as loss of fine dexterity or inability to sit for long periods of time."

> ladders, ropes or scaffolds; occasionally balance as a part of the job requirements; occasionally stoop, crouch, kneel and crawl; reach overhead bilaterally on an occasional basis; reach in front and to the side bilaterally on a frequent basis; should never work around unprotected heights or moving and/or dangerous machinery and should never be required to drive motor vehicles during work hours; can perform work that consists of only simple, routine, repetitive tasks; can have occasional contact with the public, coworkers and supervisors; can maintain concentration, persistence and pace for extended periods of two hour segments during a normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks; should have no requirement to maintain a production rate pace, such as an assembly line; and can perform low stress work, which is defined as occasional decision making and occasional changes in the work setting.

*Id.* at 21.

At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, such as housekeeper/cleaner, café attendant, or agricultur[al] product sorter. *Id.* at 26-27. The ALJ therefore concluded at step five that Plaintiff was not disabled, as defined by the Social Security Act, from her amended onset date through the date of the ALJ's decision. *Id.* at 27.

## STANDARD OF REVIEW

In reviewing the final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). In applying

the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—**such relevant evidence as a reasonable mind might accept as adequate to support a conclusion**.

*Id.* at 102-03 (cleaned up, emphasis added); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133). This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the Commissioner's choice between two fairly conflicting views").

## ANALYSIS

On appeal, Plaintiff asserts two claims of error. She contends that the ALJ erred by improperly finding her alleged fibromyalgia and EDS were not medically determinable impairments ("MDIs"), and in analyzing the opinion of the consultive examiner, David R. Benson, Ph.D., in determining Plaintiff's mental and social impairments.

*I.     The ALJ's Analysis of Plaintiff's Alleged Fibromyalgia and EDS*

Plaintiff argues that the ALJ erred in finding that her fibromyalgia was not an MDI at

step two. In making that finding, the ALJ provided the following analysis:

> As to the claimant's alleged fibromyalgia, the undersigned finds the impairment is not medically determinable pursuant to SSR 12-2p.  Social Security Ruling 12-2p provides guidance for evaluating fibromyalgia, a complex medical condition characterized by widespread pain in the joints, muscles, tendons, and/or nearby soft tissues that persists for at least three months.
>
> To establish a medically determinable impairment of fibromyalgia, a diagnosis alone may be insufficient, as the medical evidence of record must show treatment notes consistent with fibromyalgia, show how symptoms have changed over time, and establish a person's strength and functional abilities over time.

ECF No. 8-2 at 17 (paragraph break added).

As the ALJ noted, under SSR 12-2p, a diagnosis of fibromyalgia is not enough to support that a claimant has an MDI from this syndrome:

> A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. **We cannot rely upon the physician's diagnosis alone.** The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

SSR 12-2p, at *2 (emphasis added).

Thus, a physician's diagnosis of fibromyalgia is relevant, but the ALJ must also analyze the record for evidence meeting objective criteria:

> There are two sets of criteria used to diagnose fibromyalgia. Based on the 1990 ACR [American College of Rheumatology] Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria, we may find a person has a medically determinable impairment of fibromyalgia if she has all of the following:
> 1) a history of widespread pain that has persisted for at least three months and affects all quadrants of the body;

7

2) at least 11 positive tender points (out of 18) upon physical examination, both bilaterally and both above and below the waist OR repeated manifestations of six or more fibromyalgia symptoms, such as fatigue, memory problems, waking un-refreshed, depression, anxiety, or irritable bowel syndrome; **and**

3) evidence that other disorders that could cause the symptoms were excluded.

ECF No. 8-2 at 17-18 (paragraph breaks added, emphasis added). *See* SSR 12-2p, at *2-3.

Plaintiff does not dispute that SSR 12-2p provides the correct legal standards for assessing this issue, and the court concludes that the ALJ applied the correct legal standards thereunder.

Applying SSR 12-2p to Plaintiff's case, the ALJ found:

**A history of fibromyalgia is reflected in the record. However, the diagnosis appears to be primarily based upon the claimant's subjective pain complaints rather than objective medical evidence. While the record details complaints of pain, there is no evidence of a history of widespread pain that has persisted for at least three months that affected all quadrants of the body; or at least 11 positive tender points upon physical examination, both bilaterally and both above and below the waist.** The undersigned finds the claimant has not satisfied the criteria set forth by SSR 12-2p, and determines that fibromyalgia is not a medically determinable impairment.

ECF No. 8-2 at 18 (emphasis added). The ALJ further explained why he could not find Plaintiff's fibromyalgia was an MDI based only on her symptoms of pain:

An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that **the existence of impairment cannot be established on the basis of symptoms alone.** Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical

abnormalities; i.e., medical signs and laboratory findings (20 CFR 404.1521, 404.1529 and SSR 16-3p).

*Id.* (emphasis added).

Plaintiff argues that the ALJ erred in finding her fibromyalgia was not an MDI because he (1) impermissibly substituted his opinion for those of her medical providers, and (2) ignored that on a prior application, another ALJ found Plaintiff's 18/18 tender points were documented. Opening Brief at 12-13; ECF No. 15 (Reply Brief) at 2 n.1.

The Commission notes that Plaintiff's Opening Brief does not expressly contend that her fibromyalgia would add functional restrictions to those the ALJ found in Plaintiff's RFC. The Commissioner argues that Plaintiff had to make that argument expressly here, else any error in the ALJ's omission of fibromyalgia from her RFC is harmless. Resp. Brief at 8 (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); 28 U.S.C. § 2111 (harmless error statute)). But Plaintiff does argue that the ALJ's failure to consider fibromyalgia as an impairment at step two "tainted the rest of the analysis"—including her RFC, on which the ALJ based his finding at step five— and the Commissioner's burden of proof (at step five) is not satisfied. Opening Brief at 16.

It is not necessary to resolve whether Plaintiff had to specifically argue here that her fibromyalgia would support additional restrictions in her RFC because the ALJ did not err in declining to find Plaintiff's fibromyalgia was an MDI.

First, the ALJ did not impermissibly substitute his opinion for those of the medical sources. As noted above, SSR 12-2p prohibits finding an impairment from fibromyalgia based solely on a diagnosis: "We cannot rely upon the physician's diagnosis alone." *Id.* at *2. SSR 12-2p specifically states that, while the ALJ can consider the diagnosis, the ALJ should also review

the record for evidence to support the specific, objective criteria listed in SSR 12-2p. Thus, "the ALJ did not err in relying on the lack of objective findings." *Nielsen v. Comm'r, SSA,* No. 21-4136, 2022 WL 15570650, at \*5 (10th Cir. Oct. 28, 2022)[7] (holding that despite finding the claimant's fibromyalgia was a severe impairment, the Commissioner could also find the claimant not disabled due to the lack of objective evidence that her symptoms were as severe as she said). The ALJ did not impermissibly substitute his opinion in place of the medical sources' opinions. *Cf. id.* (in finding the claimant's subjective complaints of pain were not consistent with the objective evidence, the ALJ did not improperly reject the medical source's reliance on those subjective complaints).

Second, although Plaintiff points to a fact finding on her *prior* application—specifically, a finding that she had 18 out of 18 tender points confirmed by a medical provider—Plaintiff does not contend that this evidence was in the record for her *present* application. Nor could it have been, as the prior application concerned a different time period and that application was denied. Although it may be counterintuitive that Plaintiff would have to build her medical records anew after her first application was denied, Plaintiff does not point to any legal error in the ALJ limiting his consideration to the evidence presented for her current application. Nor does the

---

[7] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

court find any error in the ALJ doing so.

Third, Plaintiff points to several opinions in the record that found Plaintiff's fibromyalgia was an impairment or referred to as such. Specifically, Plaintiff cites (a) her nurse practitioner, Jade Bryant, FNP; (b) the consulting examiner, Dr. Buck, who diagnosed fibromyalgia; (c) the State agency physician, James Metcalf, M.D., who found fibromyalgia to be the primary impairment in Plaintiff's current claim at the initial level; (d) Dr. Grason, who found that Plaintiff had chronic widespread pain for more than three months, another of the objective criteria; (e) Kristina Barber, M.D., who performed an agency exam and diagnosed Plaintiff with fibromyalgia; and (f) Glenn Gade, M.D., who reviewed the medical record on the reconsideration level and found her fibromyalgia to be a severe impairment. Opening Brief at 13-14 (citing AR 42, 44, 49, 119, 129, 354, 357, 378, 393-94, 415, 419-20).

But Plaintiff does not argue that these sources provide anything more than their diagnoses; i.e., they do not provide evidence for the objective criteria listed in SSR 12-2p. The court has reviewed each of the documents that Plaintiff cites on this issue, and none of them reflect evidence of the objective criteria listed in SSR 12-2p. Nurse Practitioner Jade Bryant said Plaintiff had EDS, not fibromyalgia, and in any case, she is not a physician (and SSR 12-2p prohibits considering a fibromyalgia diagnosis by anyone other than a physician). ECF No. 8-7 at 354, 357. Dr. Buck examined Plaintiff but did not do any pressure point testing and did not exclude any other causative conditions. *Id*. at 373-70. Dr. Grason did not diagnose Plaintiff with fibromyalgia, but rather noted that Plaintiff reported she had chronic, widespread pain for more than three months and has a diagnosis of fibromyalgia. ECF No. 8-7 at 393-94. Dr. Barber examined Plaintiff in 2021, noted Plaintiff's report that she began having chronic, widespread

pain in 2013, and diagnosed Plaintiff with (among other things) fibromyalgia, but Dr. Barber does not note having conducted a pressure point test or having done anything to rule out other possible causative conditions. *Id.* at 415-20.

Assuming that Dr. Grason's and Dr. Barber's notes of Plaintiff's subjective reports of pain suffice for the first of the three objective criteria (evidence of chronic, widespread pain for more than three months), Plaintiff does not argue that *any* of the opinions in the record suffice to meet the second criterion (a confirmed minimum of eleven out of eighteen tender points) or the third (all other conditions that could cause her symptoms were ruled out). Plaintiff's briefs do not point to evidence in the record to support the second and third elements, and she therefore does not show that the ALJ erred in relying on the lack of objective evidence and finding that the record did not support fibromyalgia as an MDI.[8]

Plaintiff relies on cases from this District as finding an ALJ errs in relying too heavily on an absence of objective evidence, or in rejecting subjective allegations of pain for this impairment. *See* Opening Brief at 14 (citing *L.A.R. v. Kijakazi*, No. 21-cv-02728-NRN, 2022 WL 4364154, at *3 (D. Colo. Sept. 20, 2022); *Zumpone v. Saul*, No. 19-cv-03191-RBJ, 2020 WL 5810064, at *4 (D. Colo. Sept. 30, 2020); *M.L.P. v. Kijakazi*, No. 20-cv-01783-KLM, 2022 WL 407277, at *4 (D. Colo. Feb. 9, 2022); and *Moore v. Barnhart*, 114 F. App'x 983, 990 (10th Cir. 2004)). But after those cases were decided, *Nielsen* rejected this aspect of *Moore*:

---

[8] It also bears noting that in the documents Plaintiff cites, Dr. Barber opined that Plaintiff was *less* limited than the ALJ ultimately found Plaintiff to be (ECF No. 8-2 at 25). And although Dr. Metcalf and Dr. Gade found Plaintiff's fibromyalgia was a severe impairment (*id.* at 42; ECF No. 8-3 at 125), they both nonetheless denied her application. ECF No. 8-3 (Dr. Metcalf, decision denying disability in October 2020); ECF No. 8-2 at 49 (Dr. Gade, decision affirming on administrative reconsideration, July 2021).

> [W]e are not persuaded by Ms. Nielsen's reliance on *Moore* for its statement that an ALJ errs by requiring objective evidence of fibromyalgia because it is "a disease that eludes [objective] measurement," 114 F. App'x at 992 (internal quotation marks omitted). *Moore* is unpublished and therefore not precedential, and it also predates SSR 12-2P's directive to consider objective evidence.

*Nielsen*, 2022 WL 15570650, at *4.

Again, under the applicable standard of review, this court is limited to reviewing only whether the ALJ applied the correct legal standards of SSR 12-2p and whether his findings are supported by evidence that a reasonable mind would accept as supporting those findings. Here, the court finds that the ALJ's findings with respect to Plaintiff's fibromyalgia meet that deferential standard.

The court is likewise not persuaded by Plaintiff's argument that the ALJ erred in finding her EDS is not an MDI. The Commissioner points out that the ALJ did consider Plaintiff's joint hypermobility and joint pain as a severe impairment, as Plaintiff wished. The ALJ simply considered the applicable medical condition to be "hypermobility," not EDS. Plaintiff does not dispute that Dr. Grason, the doctor who saw her at the University of Colorado Adult Genetics Clinic, opined that after EDS was redefined in 2017, Plaintiff does not have a diagnosis of EDS. ECF No. 8-2 at 18 (citing Ex. B8F/4, AR 392); *Id*. at 23 (citing Ex. B8F/5). Dr. Grason said: "I feel the most suitable clinical diagnosis is Generalized Hypermobility Spectrum Disorder." ECF No. 8-7 at 392. The ALJ found Plaintiff's hypermobility to be a severe impairment and included it in assessing Plaintiff's RFC. ECF No. 8-2 at 17, 25 ("the medical evidence and testimony, taking into consideration the claimant's hypermobility and chronic joint pain, supports additional postural and environmental limitations"); *see also id*. at 78 (in her testimony, Plaintiff agreed that EDS is "like hypermobility of the joints"). The ALJ did not err in finding that Plaintiff's alleged

EDS was not an MDI.

II.     *The ALJ's Analysis of the Opinion of David R. Benson, Ph.D.*

Next, Plaintiff argues the ALJ erred in not adequately explaining why he found unpersuasive Dr. Benson's opinion that Plaintiff had "moderate to marked" impairments in her ability to interact with the public, respond to usual work situations, and to handle changes in routine work settings. Opening Brief at 18.

Dr. Benson was the consultative examiner for the Commissioner. Dr. Benson performed a detailed mental status examination of Plaintiff in October 2020. *Id*. at 22; ECF No. 8-7 at 361-69 (Ex. B3F, report). The ALJ summarized Dr. Benson's report in detail:

> She reported that she lived in a house with her common law husband and three children, ages 11, 9 and 7. . . . She reported her husband helped with household tasks and she was limited in her ability to do physically demanding activities. She reported that she was able to walk three blocks, drive a car occasionally and manage her own finances.
>
> She reported that she was socially isolated but she maintained contact with people at church and she generally got along with other people. She was affable, open, and engaging, and it was easy to establish rapport with her. She was polite, genuine, and considerate, and appeared to be a reliable informant. Her speech was easy to understand, and she expressed herself adequately and clearly, without much detail, using linear, goal directed speech.
>
> She reported ADD symptoms, stating that it is hard for her to focus and stay on task, and she had selective attention with boredom. Her anxiety symptoms included excessive worry. She had panic attacks on occasion in high stress situations and crowds.
>
> Her depressive symptoms included dysphoria, hopelessness, trouble concentrating, and a lack of enjoyment in normally enjoyed activities. She tended to feel sad, melancholic, depressed, irritable, and anxious. She got distracted and she had trouble concentrating. She appeared preoccupied, distracted, sad, blunted, and gloomy. She has a distinctly dysphoric affect and appeared more dysphoric than anxious. She denied current or former suicidal ideation.
>
> She was alert and oriented during the interview and testing. Her remote memory was intact and she could reconstruct life events in a linear fashion with

general accuracy. She was read five words and could repeat three accurately on the first try, and then five on the second try. She was read four, five, and six digit numerical sequences and could repeat up to five. She could repeat five words of an eight word address read to her and she could calculate a simple subtraction problem of serial 3's in her head with one error. Her recent memory and attention to task did not appear adequate. She reported that she was more attentive if she was interested in a task or situation.

ECF No. 8-2 at 22-23 (paragraph breaks added, citing Ex. B3F, ECF No. 8-7 at 361-69).[9]

In assessing the mental status opinion evidence, the ALJ first addressed the prior

administrative findings from the state agency psychological consultant on reconsideration:

The state agency psychological consultant found the claimant has **moderate limitations** in interacting with others and **moderate limitations** in maintaining concentration, persistence or pace, which is consistent with the evidence discussed above [*see* ECF No. 8-2 at 21-23]. The consultant noted that the claimant retained mental ability to perform work that did not involve significant complexity or judgment. The consultant reviewed and outlined findings to support the conclusions. The psychological consultative exam was noted to indicate problems with focus and attention, but intact memory and full orientation. (Ex. B6A). The record shows that the claimant has problems interacting with others and sustaining concentration and attention due to symptoms and complications related to mental impairments, which supports **moderate limitations** in those areas. The evidence also supports **moderate limitations** in adapting or managing oneself. As such, she can perform work that consists of only simple, routine, repetitive tasks; can have occasional contact with the public, coworkers and supervisors; can maintain concentration, persistence and pace for extended periods of two hour segments during a normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks; should have no requirement to maintain a production rate pace, such as an assembly line; and can perform low stress work,

_____

[9] The court omits a sentence from this portion of the ALJ's decision and the ALJ's finding that Dr. Benson's opinion was partially unpersuasive, in which the ALJ stated that Plaintiff had reported to Dr. Benson that she was home schooling her children. The Commissioner recognizes this was inaccurate, as Plaintiff reported that her *husband* was home schooling their children. ECF No. 14 (Response Brief) at 19. *See* ECF No. 8-2 at 73-74 (Hrg. Trans.); ECF No. 8-7 at 365.

> which is defined as occasional decision making and occasional changes in the work setting.

ECF No. 8-2 at 24 (citing Ex. B6A, ECF No. 8-3, 135-60) (emphasis added).[10] The ALJ found the State agency consultant's opinion on reconsideration persuasive because it was "generally supported by the evidence as a whole." *Id*. Plaintiff does not challenge this determination.

The ALJ then went on to address the opinion of Dr. Benson, finding his opinions persuasive to the extent he found Plaintiff has moderate impairments and unpersuasive to the extent he found those impairments also to be marked. The ALJ stated:

> The undersigned finds the opinion of the psychological examiner, Dr. Benson, persuasive with regard to the assessed moderate limitations. However, the examiner also found the claimant had up to marked limitations in interacting with the public and tolerating work changes, which is not consistent with the evidence.
>
> The evidence does not support any marked level impairment. The examiner based his findings on a one time examination of the claimant and it is not supported by the overall exam and the other medical evidence. The claimant reported that it was hard for her to focus and stay on task, and she had selective attention with boredom, but she reported that she was more attentive if she was interested in a task or situation.
>
> On exam, her remote memory was intact and she could reconstruct life events in a linear fashion with general accuracy. She was alert and oriented during the interview and testing. She was polite, genuine, and considerate, and appeared to be a reliable informant. She was affable, open, and engaging, and it was easy to establish rapport with her. She reported that she was socially isolated but she maintained contact with people at church and she generally got along with other people. . . . (Ex. B3F).
>
> Additionally, the record fails to show any ongoing mental health treatment and no history of psychiatric hospitalization. The treatment records fails to document significant mental health issues throughout the relevant period.

---

[10] The court has reviewed the State agency consultant's opinion, and the ALJ accurately summarized the consultant's findings. *See, e.g.*, ECF No. 8-3 at 147-48.

ECF No. 8-2 at 24 (paragraph breaks added). The ALJ thus found Dr. Benson's opinion of

marked limitations to be unpersuasive because of the lack of support for that opinion in his

examination report and because it was inconsistent with the medical evidence in the record.

Plaintiff argues that the ALJ erred in finding Dr. Benson's opinion that she had marked

mental and social impairments unpersuasive. For the reasons that follow, the court respectfully

disagrees.

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed

her application in 2020—the ALJ will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinions or prior administrative medical findings,

including those from a claimant's own medical sources. 20 C.F.R. § 416.920c.[11] Instead, under

the applicable regulation, the ALJ will consider the persuasiveness of each medical source

opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant

(which encompasses the length of treatment relationship, the frequency of examinations, the

purpose and extent of the treatment relationship, and the examining relationship);

(4) specialization; and (5) other factors tending to support or contradict a medical opinion or

prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)-(c)(5). The most important

factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R.

§ 416.920c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo.

July 21, 2021).

---

[11] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Consistency thus "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. § 416.920c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing inter alia 20 C.F.R. § 416.920c(b)(2)-(3)).

The court reviews the ALJ's evaluation of Dr. Benson's opinions to ascertain whether the ALJ applied the correct legal standards and whether "substantial evidence supports the ALJ's decision" to find Dr. Benson's opinion in part unpersuasive. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ decision that found some opinions of a medical source to be persuasive, and others unpersuasive). *See also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at *11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen*, 2022 WL 15570650, at *5 (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Here, the ALJ applied the correct legal standards. The ALJ states that he considered the medical opinions and prior administrative medical findings in accordance with the requirements

of 20 C.F.R. § 416.920c. ECF No. 8-2 at 24. The ALJ found Dr. Benson's opinion that Plaintiff

had marked impairments unpersuasive because it was (1) not supported by Dr. Benson's own

examination findings—which the ALJ summarized in detail in the decision—and (2) not

consistent with the medical evidence of record because there was no record evidence of

significant mental health treatment for the time period at issue. *Id.* As such, the ALJ's order

properly assessed the supportability and consistency of Dr. Benson's opinion when determining

and rejecting its persuasiveness, as required by 20 C.F.R. § 416.920c(b)(2), which is the correct

legal standard. *Miles*, 2021 WL 3076846, at *3; *see also P.T. v. Comm'r of Soc. Sec.,* No. 22-cv-

02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (ruling that the court was able to

"follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical

opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

Substantial evidence supports the ALJ's findings concerning Dr. Benson's opinion. The

ALJ noted the *lack* of support in Dr. Benson's examination report for his ultimate opinion that

Plaintiff had any marked limitations in interacting with the public or tolerating work changes. As

the ALJ correctly noted, Dr. Benson observed that Plaintiff, for instance, "was affable, open, and

engaging, and it was easy to establish rapport with her. She reported that she was socially

isolated but she maintained contact with people at church and she generally got along with other

people." ECF No. 8-2 at 24; ECF No. 8-7 at 367. The court is able to follow the ALJ's reasoning

that Dr. Benson's examination did not support his opinion that Plaintiff had marked mental or

social impairments.

Indeed, although the ALJ was not required to specifically address the supportability of

*each* of Dr. Benson's opinions (20 C.F.R. § 416.920c(b)(1)), the ALJ addressed several additional aspects of Plaintiff's mental and social functioning that Dr. Benson observed in his report, none of which were consistent with any marked impairment. ECF No. 8-2 at 24. Although (as briefly noted above) the ALJ misstated that Plaintiff was homeschooling her children—she reported that her *husband* was handling that responsibility—this was only one fact among several that each independently support the ALJ's finding. The misstatement does not detract from the weight of the accurate facts that the ALJ cites, and the court finds it was harmless error.

In sum, because substantial evidence supports the ALJ's finding that to the extent Dr. Benson opined that Plaintiff had marked limitations, the opinion was unsupported by his examination of Plaintiff, the court finds no reversible error in this finding.

With regard to the ALJ's second finding—that this aspect of Dr. Benson's opinion was also inconsistent with the medical evidence of record—this finding is likewise supported by substantial evidence. The ALJ noted that there was no record evidence that Plaintiff received any "ongoing mental health treatment" during the relevant time period. ECF No. 8-2 at 24. Plaintiff argues that, to the contrary, she testified during the hearing that throughout this time period she saw a therapist, John Hardy, Ph.D. ECF No. 8-2 at 63-64. Plaintiff's counsel requested to keep the record open for seven days after the hearing, so that she could obtain and submit the treatment records from Dr. Hardy. The ALJ declined that request because Plaintiff's counsel had not complied with an agency rule concerning the same. *Id*. at 63-65. But the ALJ said he would consider any such records that were submitted before he signed a written decision. *Id*. at 65. The hearing was held on February 23, 2022, and the ALJ did not issue his written decision until

March 16, 2022. This allowed more than three weeks in which Plaintiff could have submitted her records from Dr. Hardy, and Plaintiff does not argue that she did so. Nor has the court found in the Administrative Record any treatment records from Dr. Hardy.

Moreover, Plaintiff testified in the hearing that she saw Dr. Hardy every three months to manage the antidepressant medication she was taking. ECF No. 8-2 at 76. While this medication and Dr. Hardy's management thereof was "ongoing mental health treatment," later in the same paragraph, the ALJ further specified his reasoning in noting that the "treatment records fail[] to document *significant* mental health *issues* throughout the relevant period." ECF No. 8-2 at 24 (emphasis added). While there may be a range of inferences to draw concerning the level of impairment (if any) from the fact that Plaintiff took an antidepressant medication, resolving conflicting inferences is the task of the ALJ. This court is obliged to confine its review to the question of whether *the evidence on which the ALJ relied* was such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Here, the court concludes that it was. The court has reviewed the Administrative Record and finds that the ALJ did not misrepresent or engage in "impermissible cherry-picking," *see, e.g.*, *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018)), of the medical records. And the ALJ's finding is further supported by the prior administrative medical findings of the State agency psychological consultant, which the ALJ discussed immediately prior to finding Dr. Benson's opinion as to marked limitations unpersuasive. ECF No. 8-2 at 24 (explaining that on reconsideration, the state consultant found Plaintiff had moderate limitations).

Accordingly, the ALJ's finding—that to the extent Dr. Benson opined Plaintiff had marked limitations, his opinion was inconsistent with the medical evidence of record—is

supported by substantial evidence. The court finds no error here.

## CONCLUSION

For the reasons set forth above, it is ORDERED that the decision of the Commissioner is

AFFIRMED. Judgment shall enter accordingly.

Dated: September 20, 2024.                         BY THE COURT:

                                                   _____
                                                   Susan Prose
                                                   United States Magistrate Judge